Filed 3/21/23 Schumann v. Maxon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GINA M. SCHUMANN, | |
| Plaintiff and Appellant, | G061230 |
| v. | (Super. Ct. No. 30-2021-01224073) |
| KELLY MAXON, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Glenn Mondo, Temporary judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Much Shelist, Isaac R. Zfaty, Ryan Burns and Kaeleen E. N. Korenaga for Plaintiff and Appellant.

MBK Chapman, Jason K. Boss, William D. Chapman and Jessica P. Grazul for Defendant and Respondent.

Gina M. Schumann filed an ex parte petition for a civil harassment restraining order (CHRO) against her upstairs neighbor, Kelly Maxon, and Maxon's attorney, Chris Xouleis. After the trial court denied Schumann's ex parte request, but before the court held a hearing on the petition, Schumann voluntarily dismissed the matter. Maxon, as the prevailing party, filed a motion requesting $13,051.75 for attorney fees. The court granted the motion but awarded only $8,993.75. Schumann asserts the court's award was an abuse of discretion and the amount was unreasonable. Finding her contentions lack merit, we affirm the court's order.

FACTS

In 2013, Schumann (56 years old) and her husband purchased a condominium in Mission Viejo (the Property) as a place for her 76-year-old mother, Donna Sparks, to live. In 2016, Maxon (57 years old) moved into a condominium unit located one floor above the Property and developed a friendly relationship with Sparks.

Four years later, in November 2020, Schumann moved in with Sparks. The following month, Schumann and Sparks began receiving noise complaints from Maxon. Schumann suspected the noise complaints started because Maxon learned Schumann planned to sell the Property and Maxon wanted to interfere.

Maxon, through her attorney Xouleis, filed a written request for dispute resolution with the homeowner's association (HOA). Maxon also left notes for Schumann requesting noise abatement and forwarded these notes and the HOA documents to Schumann's real estate agent and broker. The agent, having a duty of disclosure, was required to forward these documents to potential buyers. Schumann believes these documents reveal a "'crazy lady'" lived upstairs and was the reason she had not been able to sell the Property.

On September 30, 2021, Schumann's attorney notified Maxon of her plans to seek an ex parte CHRO for the following day (October 1, 2021). She filed separate petitions against Maxon and Xouleis. Relevant to this case, in her petition, Schumann

2

stated she and Sparks needed protection against further harassment with "constant unfounded noise complaints" and threatening behavior. The petition alleged Maxon's harassment escalated when she provided Schumann's real estate agent and broker with a "stack of documents" related to noise criticisms and HOA mediation efforts. Schumann believed this collection of documents reflected Maxon's "obsessiveness and harassment." She claimed a buyer backed out of a sale of the Property because of Maxon's actions.

She described the harassment as including verbal threats and continued harassment unless Schumann spent "thousands of dollars to install an acoustic ceiling" to better soundproof the home. In the section of the petition asking about the harm or injury, counsel wrote Schumann and Sparks both suffered from chronic illnesses that were exacerbated by the stress hormone cortisol. Schumann wrote, "The added stress of feeling like they are being spied on, listened to, and caught up in Maxon's senseless scheme for financial gain from either the HOA or Schumann's family is something they could have never imagined." Schumann alleged the unnecessary stress was "taking a toll on their finances and health."

The petition asked the trial court to restrain Maxon from doing any of the following things: (1) "Harass, intimidate . . . or disturb the peace of the person"; (2) "Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone . . . ." (boldface omitted); and (3) "Contact owners living at [the Property in] Mission Viejo . . . as well as owners' realtor and agent . . . either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing . . . ." The petition also requested stay away orders, to keep Maxon at least 10 yards away from Schumann's real estate agent and broker.

The court's minute order reflects there were no appearances at the hearing. On October 1, 2021, the court denied the ex parte applications and scheduled an order to show cause (OSC) on the two CHRO petitions for October 26, 2021.

Maxon and Schumann discussed the case on October 5, 2021, and again on October 19, 2021. The parties acknowledged Maxon was still pursuing her noise complaints with the HOA, and Schumann planned to file a civil action. On October 21, 2021, Schumann filed a request to dismiss her two petitions without prejudice. Schumann served the notice of dismissal on October 25, 2021.

On December 17, 2021, Maxon filed a motion for attorney fees pursuant to Code of Civil Procedure section 527.6, subdivision (s).[1] Xouleis did not file a motion. Maxon requested a total of $13,051.75. On December 30, 2021, Schumann filed a substitution of attorney, and her new attorney filed an opposition. Schumann also filed a civil complaint for intentional interference with contractual relations against Maxon.

The court held a hearing and took the matter under submission. It issued a minute order a few days later awarding $8,993.75 in attorney fees. It explained the voluntary dismissal permitted Maxon to seek recovery of fees. It summarized the nature of the dispute as follows: "[Schumann] claimed [Maxon's] conduct related to the noise complaints constituted harassment. However, the request filed . . . did not allege an act of unlawful violence or a credible threat of violence. Therefore, the only possible ground on which [to] obtain relief was for a knowing and willful course of conduct directed specifically at [Schumann/Sparks] that seriously alarmed, annoyed, or harassed [them]; that served no legitimate purpose; and that would cause a reasonable person to suffer substantial emotional distress and in fact caused substantial emotional distress to [Schumann/Sparks]."

The court noted that although it did not consider the merits of the petition, it appeared that "the vast majority of the conduct" fell outside the scope of section 527.6. It explained there was a tension between stopping harassment and interfering with one's constitutional right to free speech. It understood the petition was based on allegations

---

[1] All further statutory references are to the Code of Civil Procedure.

Maxon needed to stop communicating with a real estate agent and broker, the police, and the HOA, which was conduct protected by the First Amendment. The court referred to the civil action pending between the parties as being a more appropriate avenue for relief than a CHRO. The court concluded Schumann's claims for emotional distress also did not appear reasonable.

With respect to the attorney fee motion, the court stated section 527.6 provides that an award is discretionary. It described the contents of the attorney declarations supporting the motion as identifying the date of services, the attorney working on those tasks, a description of the work, an hourly rate, and the time spent. The court noted the tasks included research and expenses expended before learning about the dismissal, such as work related to a possible anti-SLAPP motion.[2] The declaration also specified time spent on the attorney fee motion and anticipated time to prepare a reply and appear at the hearing.

The court reduced the requested sum to $8,993.75. It explained the billing entries referred to work by multiple attorneys, with hourly rates ranging from $315 to $495. It opined these rates "while steep, are not outside the range of fees charged by attorneys of similar skill and experience in this jurisdiction." However, the court noted not all of the listed tasks should be included in the award. It reduced the amount requested because (1) "there were multiple internal conferences amongst counsel where the client was billed for time incurred by each attorney involved," (2) the topics of discussion during some conferences were blacked out, and (3) some client communications did not contain enough detail about the subject matter. The court explained that because the parties were involved in dispute procedures involving the HOA, greater specificity was required to ensure the billing related to the CHRO request. The court determined it could not include one billing entry that related to a discussion

_____

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

5

with the HOA attorney regarding mediation. Finally, the court determined the bill for 8.9 hours related to the attorney fee motion was on the "high side." It concluded, "The court has made some reductions for time spent on the above identified tasks. In reaching this decision, the court considered the amount of [attorney] fees claimed[,] the novelty or difficulty of the questions involved and the skill requisite to perform the service properly[,] the likelihood that acceptance of this particular employment would preclude other employment by the lawyer[,] time limitations imposed by the circumstances[,] the experience, reputation and ability of the lawyer performing the services[,] whether the fee was fixed or contingent[,] and the time and labor required."

DISCUSSION

I. *Authority to Award Attorney Fees*

In actions for injunctive relief against harassment, the prevailing party "may be awarded court costs and attorney's fees . . . ." (§ 527.6, subd. (s); *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 800-802, & fn. 5 (*Krug*).) The decision whether to award attorney fees to a prevailing party is a matter committed to the discretion of the trial court. (*Id.* at p. 802.) We find no abuse of discretion here.

Schumann suggests the court abused its discretion because she filed the petition in good faith and voluntarily dismissed the matter because "it seemed that the mere filing of the CHRO had the intended effect—an end to the harassment." She adds it was wrong of the court to penalize her for making a good faith attempt to "informally resolve" her dispute with Maxon and that "[e]fficient resolutions between the parties should be encouraged." She cites no authority to support the novel "good faith" theory, which is, in fact, contrary to case law. As explained by the court in *Krug, supra,* section 527.6, unlike other statutes, does not make an award of attorney fees contingent upon the conduct of the parties. (*Krug, supra,* 172 Cal.App.4th at p. 803.) In that case, the court determined "no published opinion [had] squarely decided the question whether a prevailing *defendant* in an action under the statute can recover attorney fees when the

6

action, though unsuccessful, was neither frivolous nor brought in bad faith." (*Id.* at p. 798.) Applying the normal rules of statutory construction, it interpreted the statute's language stating the prevailing party *may* be awarded attorney fees as plainly granting unconditional discretion to the decisionmaker. It reasoned "there are numerous so-called 'sanctions statutes' in which the Legislature has explicitly limited the recovery of attorney fees" to when a party has acted in bad faith, and its failure to include similar limitations in section 527.6 "leads inescapably" to one conclusion. (*Id.* at p. 803.) Section 527.6 gives both plaintiffs and defendants "an equal opportunity to recover their attorney fees, as well as costs, if they prevail." (*Ibid.*) Thus, Schumann's alleged good faith in filing the petition presents no bar to Maxon's recovery of attorney fees.

We also found no case authority, and Schumann cites to none, describing CHRO proceedings as a way to *informally resolve* disputes or that courts should encourage petitions for CHROs. The legislative history states section 527.6 was enacted to ""establish an expedited procedure for enjoining act of 'harassment[.]"" [Citation.]" (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 520.) ""The purpose of the [statute] is to provide quick relief to harassed persons."" [Citation.]" (*Ibid.*) Under prior law, a victim was required to file a tort action, and if irreparable injury was threatened, the victim could seek an injunction under section 527, subdivision (a). (*Ibid.*) Thus, the statute was designed to quickly help true harassment victims. It was never intended to be a dispute resolution device for parties simply involved in heated, contentious civil dispute.

In addition, Schumann suggests she is the prevailing party because she obtained her litigation objectives. However, the record does not support her claim the CHRO efficiently resolved the dispute or had the intended effect of ending harassment.

After all, Schumann initiated civil litigation requesting an injunction, and Maxon did not drop her HOA complaint.[3]

We find it telling Schumann did not file a motion to recover attorney fees claiming to be the prevailing party. She makes this claim only in response to Maxon's motion. Moreover, we noticed a section of Schumann's opening brief concedes she did not obtain her litigation objectives. She wrote: "dismissal of the [petition] for CHRO was not because the dispute had been resolved, but because it was apparent that a different venue would be more appropriate for the nature of the dispute and relief required. Schumann's dismissal was in the interest of judicial efficiency and was conscious of the [c]ourt's [ex parte] ruling on the CHRO."

On a final note, we appreciate section 527.6, subdivision (s) does not define prevailing party, but courts use the general definition found in section 1031. (*Elster v. Friedman* (1989) 211 Cal.App.3d 1439, 1443.) Section 1032, subdivision (a)(4), provides: "'Prevailing party' includes . . . a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." Maxon is a prevailing party because Schumann voluntarily dismissed the CHRO. The court did not abuse its discretion in awarding Maxon attorney fees under section 527.6.

## II. *Amount of Attorney Fees*

Schumann has not demonstrated the trial court abused its discretion in awarding $8,993.75 to Maxon. Contrary to Schumann's assertion, this award was not

---

[3] Schumann's complaint for interference with contractual relationships alleges the harassment was ongoing. In addition to scaring away potential buyers, Schumann raised the allegation (using the present tense) that she "is unable to rent the [Property] as she is afraid the renters will be subject to Maxon's harassing behavior." Additionally, the complaint sought an injunction prohibiting Maxon "from interfering" with the sale of the Property, suggesting the alleged misconduct has not stopped.

excessive. The court determined the request for approximately $13,000 was excessive and declined to award that amount. The court's minute order reflects it considered the complexity of the matter, the time limitations created by the circumstances of an ex parte CHRO request, and other factors such as the skill and experience needed from the lawyers working on the case. Relying on its experience evaluating attorney requests and careful review of the invoices, the court awarded much less than what was requested. (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095 ["'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"'"].)[4]

We reject Schumann's assertion the court was required to explain how it calculated the sum of $8,993.75. She does not cite to any case authority holding the court was required to provide detailed calculations. In *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140, our Supreme Court held the trial court was "not required to issue a statement of decision with regard to the fee award." It confirmed application of the general rule: "'"All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown."' [Citation.]" (*Ibid.*) "[W]e cannot reverse an attorney fee award solely for lack of an explanation by the trial court. We can reverse only if the record contains some indication that the trial court considered improper factors or did, indeed, simply snatch its award 'from thin air.' [Citation.]" (*Save Our Uniquely Rural Community Environment v. County of San*

_____

[4] This conclusion also resolves Schumann's assertion the award should not have included time spent on an unfiled anti-SLAPP motion. CHRO's are subject to anti-SLAPP motions protecting First Amendment rights. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 651.) Schumann's personal belief the motion was "unwarranted given the conduct being alleged" is irrelevant without supporting legal analysis, explaining why the trial judge's contrary determination was clearly wrong. To prevail, she needed to give us a valid legal reason why we should question this trial judge's evaluation of the need for, and value of, the professional services rendered.

*Bernardino* (2015) 235 Cal.App.4th 1179, 1189-1190.)  Here, the precision of the amount awarded (the court did not even round up the last 75 cents to the nearest dollar) reinforces that rather than acting arbitrarily, the court applied a rational calculation.  It does not matter that this court and the parties cannot discern exactly what it was because the record plainly reflects the court considered appropriate factors and applicable case authority.  "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination."  (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.)  Such was not the case here.

## DISPOSITION

The order is affirmed.  Respondent shall recover her costs on appeal.

O'LEARY, P. J.

WE CONCUR:

SANCHEZ, J.

MOTOIKE, J.